**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DENNIS CHAVEZ,

     **Plaintiff,**

v.                                **No. 13cv00557 WJ/SMV**

CITY OF ALBUQUERQUE,
SERGEANT PATRICK FICKE
COMMANDER JOE CHRISTMAN
SERGEANT GLEN STOUT
DETECTIVE DONALD LOPEZ
And ALBUQUERQUE FIRE DEPARTMENT
LIEUTENANT SHANE TURPEN

     **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REQUESTING DISMISSAL OF PLAINTIFF'S COMPLAINT ON QUALIFIED IMMUNITY GROUNDS**

     **THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds, filed December 12, 2013 (**Doc. No. 21**). Having considered the parties' briefs and the applicable law, the Court finds that Defendants' motion partially well-taken and, therefore, is DENIED in part and GRANTED in part.

**Background**

     This is a case arising out of alleged violations of Plaintiff's constitutional rights resulting from two (2) separate search warrants executed at Plaintiff's place of business by members of the Albuquerque Police Department ("APD"). Defendants allege that Plaintiff was selling drugs out of his business, Mr. C's Tees. Defendants obtained two (2) separate search warrants for Plaintiff's business. Plaintiff alleges that Defendants lacked probable cause for both search

warrants and that the search warrants were executed in an unreasonable manner.  Plaintiff further argues that Defendants used excessive force and unlawfully detained him during the execution of the May 11, 2010 search warrant.  Defendants originally moved for summary judgment based upon qualified immunity as to all of Plaintiff's constitutional claims.  However, in their Reply, Defendants acknowledged that in regards to Count IV (Excessive Force) and Count VI (Unlawful Detention), Plaintiff has raised an issue of disputed material fact precluding summary judgment.  Accordingly, the Court will not address Counts IV and VI, only Counts I (First Amendment retaliation), Count II (Unreasonable Search and Seizure in Application for Warrants), Count III (Unreasonable Search and Seizure in Execution of Warrants and Premises), Count V (Unreasonable Search and Seizure in Execution of Warrant of Plaintiff's Person), and Count VII (Fourteenth and First Amendment Claim Related to Use of Nuisance Abatement Team).[1]  The Court also notes that Plaintiff's Response largely focused on his request for additional discovery.  However, United States Magistrate Judge Stephan Vidmar denied Plaintiff's Request for additional discovery.  See **(Doc. No. 48)**, Order Denying Plaintiff's Request for Limited Discovery Under Rule 56(d) entered March 7, 2014.  Additionally, the Court overruled Plaintiff's Objections to Judge Vidmar's Order.  See **(Doc. No.51)**, entered April 8, 2014.  Therefore, Plaintiff is limited to the facts actually supported by affidavits or other materials in his Response.

## Discussion

## I.      Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

---

[1] Rather than discuss all of the Undisputed Material Facts generally, the Court will address the facts relevant to each count in its discussion of the individual claims.

Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id., at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id., at 252.

## II.    Law Regarding Qualified Immunity

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Qualified immunity is designed to shield public officials from liability and ensure "that erroneous suits do not even go to trial."  Hinton v. City of Elwood, Kan., 997 F.2d 774, 779 (10th Cir.1993).  Thus, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). Accordingly, the plaintiff must meet the following two-part burden:

> the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered . . .

Saucier v. Katz, 533 U.S. 194, 200 (2001)[2].   In considering whether the law is clearly established, the Court must be cognizant of the tension between so broadly categorizing a claim that the clearly established prong is essentially subsumed into the constitutional prong and making the inquiry so fact specific that it places the impractical burden on a plaintiff to come up with a factually identical case.  See Klen v. City of Loveland, Colo., 661 F.3d 498, 511 (10th Cir. 2011) (Although there does not need to be a prior case with precisely the same facts, our inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition") (citation omitted).

If the plaintiff fails to meet either part of this "heavy two-part burden," the defendant's qualified immunity defense prevails. Albright v. Rodriguez, 51 F.3d 1531, 1534-1535 (10th Cir. 1995); Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). When a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred.  Bruning v. Pixler, 949 F.2d 352 (10th Cir. 1991).  Only then must defendant bear the usual summary judgment movant's burden of showing that no material issues of fact remain that would defeat claim of qualified immunity.  Id.; Pearson v. Callahan, 555 U.S. 223, 236 (2009) (if plaintiff succeeds in carrying his two-fold burden of production, the burden shifts back to the defendant and the analysis reverts to a traditional summary judgment analysis).  At the summary judgment stage, if the record, taken in the light most favorable to plaintiff, clearly demonstrates

---

[2] This order is no longer mandatory and courts now have the discretion to address either prong first.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

the violation of a clearly established right, qualified immunity is not available. Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001).

### III.   Sergeant Ficke is Not Entitled to Summary Judgment on Count I - First Amendment Retaliation Claim

"It is ―settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  Hartman v. Moore, 547 U.S. at 256 (citation omitted).  "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right."  Id.  The Tenth Circuit has held that to establish a § 1983 retaliation claim against non-immune officials, "[a plaintiff] must plead and prove (1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of her First Amendment speech rights."  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).

In Hartman, the Supreme Court was faced with the question of whether a lack of probable cause should be required as an element of a plaintiff's retaliatory prosecution claim.  See id., 547 U.S. at 256-57 ("[T]he issue before us is straightforward: whether a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges.").   The Court extensively discussed the fact that probable cause will almost certainly be addressed in the majority of retaliatory prosecution claims because of its probative value in regards to causation.  See id., 547 U.S. at 261 ("Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred

even without a retaliatory motive."). The Supreme Court ultimately concluded, "[because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven." Id., 547 U.S. at 265-66. In this instance, the Court is not faced with a retaliatory prosecution claim, but a retaliatory execution of a search warrant. However, the Court believes that the reasoning set forth in Hartman applies equally to this situation. Parties will be just as likely to discuss probable cause or lack thereof in regards to an allegedly retaliatory search warrant as they are to discuss it for a retaliatory arrest. Therefore, the Court finds that a plaintiff claiming that a search warrant was executed in retaliation for a protected activity is required to show a lack of probable cause as an element of that claim.

Here, Plaintiff alleges that in April or May of 2010, prior to the execution of the first search warrant, he observed Defendant Sergeant Patrick Ficke ("Sergeant Ficke") stopping and searching customers as they exited Plaintiff's store. See **(Doc. No. 28-3)**, Affidavit of Dennis Chavez, at ¶¶ 3-4. Plaintiff claims that he confronted Sergeant Ficke and told him to leave his customers alone, and Sergeant Ficke responded by telling Plaintiff to "mind his own business." Id. Defendants deny that this interaction took place, and it is only Plaintiff's word that this interaction occurred; Plaintiff has not produced affidavits from any of the customers who were supposedly searched. However at this stage, the Court must view all of the facts in the light most favorable to Plaintiff. See Saucier, 533 U.S. at 201. Plaintiff claims that his comment to Sergeant Ficke to leave his customers alone constituted "protected speech" and that Sergeant Ficke retaliated by executing a search warrant on Plaintiff's business and by forcing Plaintiff to strip search. Count I (First Amendment violation) is alleged only against Sergeant Ficke, so the

6

Court will not consider the activities of the other Defendant Officers or the second search warrant.[3]   Further, to the extent that Count I is intended to allege a claim against any other Defendant, the Court dismisses those claims, because Plaintiff failed to provide any evidence of retaliatory motive or acts on the part of any other Defendant.   Additionally, Plaintiff's factual allegations regarding Count I only relate to Sergeant Ficke's actions.   See **(Doc. No. 1-1)**, p. 9, ¶¶68-70.

A.   *Plaintiff has Sufficiently Alleged a First Amendment Violation*

The Court agrees that Plaintiff has alleged he was engaged in a constitutionally protected activity in challenging Sergeant Ficke's search of his customers.   See United States v. McKinney, 9 F. App'x 887, 889 (10th Cir. 2001) (noting that a plaintiff who told an officer to "f*** off" had a "constitutional right to voice her objections to the officer's inquiries.").   As discussed further below (see Section IV), Plaintiff has alleged that Sergeant Ficke fabricated the evidence that formed the probable cause for the search warrant such that the search warrant was essentially without probable cause.   Having one's business searched and being subjected to a strip search without probable cause is certainly a consequence "that would that would chill a person of ordinary firmness from continuing to engage in that activity."   See Smith v. Plati, 258 F.3d 1167, 1176 (10th Cir. 2001).   In regards to the third element, causation, the timing of the alleged interaction between Plaintiff and Sergeant Ficke in relation to the execution of the search warrant is such that a reasonable jury could draw the inference that the search was motivated by Plaintiff's protected speech.   As discussed further below (see Section IV), Plaintiff has sufficiently alleged facts that in the light most favorable to Plaintiff would negate the probable

---

[3]  The Court notes that Plaintiff failed to clearly identify in the caption of each Count against which Defendants each Count was alleged.  Further, Plaintiff failed to clarify against which Defendants each Count was alleged in his Response to Defendants' Motion for Summary Judgment.  The Court will consider the factual allegations made in each count.  The Court points out that Plaintiff could have made his claims much more clear by simply captioning the counts in his First Amended Complaint properly.

cause established for the warrant.  These facts are enough not only to establish the stand alone element of a lack of probable cause, but also bolster Plaintiff's argument that the search warrant was motivated by his protected activity.  See Hartman, 547 U.S. at 261(discussing the interplay between the lack of probable cause element and causation element).  Accordingly, the Court finds that Plaintiff has satisfied the first prong of the qualified immunity analysis by alleging facts that amount to a violation of Plaintiff's First Amendment rights.

      B.       *The Right was Clearly Established at the Time of the May 2010 Search Warrant*

The second question in the qualified immunity analysis is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  Sergeant Ficke's argument for qualified immunity turns almost exclusively on his contention that the both the search warrant and the strip search were justified by the existence of probable cause.  However, Plaintiff has alleged that there was no probable cause and has set forth minimally sufficient facts in support of his allegation.  Accordingly, the Court must consider whether a reasonable officer would have known that executing a search warrant on a suspect's business and strip searching that subject without probable cause in response to a suspect's complaints about that officer's activities would violate that suspect's First Amendment rights.  Thus, Defendants' reliance on Reichle v. Howards, 132 S. Ct. 2088 (2012), is misplaced because the plaintiff's arrest in Reichle *was* supported by probable cause.  See id, at 2093 ("We conclude that, at the time of [the plaintiff's] arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. We, therefore, reverse the judgment of the Court of Appeals denying [the] petitioners qualified immunity.").  The Tenth Circuit has "stated that "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an

infringement of that freedom." Lackey v. Cnty. of Bernalillo, 166 F.3d 1221 (10th Cir. 1999) (unpublished). Based upon the above-referenced case law, the Court finds that a reasonable officer in Sergeant Ficke's position would have known that conduct alleged by Plaintiff was unlawful. Thus, Plaintiff has satisfied the second prong of his qualified immunity burden and Sergeant Ficke is not entitled to qualified immunity on the First Amendment claim in Count I.

## IV. Defendants Sergeant Ficke and Detective Lopez are not Entitled to Qualified Immunity on Count II- Unreasonable Search and Seizure in Application of Warrants

Plaintiff asserts that Defendants Sergeant Ficke and Detective Don Lopez ("Detective Lopez") violated his rights in the application for both the May 11, 2010[4] and March, 23 2011[5] search warrants. Before discussing the facts underlying the warrants, however, the Court finds it paramount to discuss the contours of Count II of Plaintiff's First Amended Complaint. Count II is captioned "Fourth Amendment Claims Unreasonable Search and Seizure in Application of Warrants." See **(Doc. No. 1-1)**, Plaintiff's First Amended Complaint, p. 10. Count II alleges that: 1) Plaintiff never sold drugs; 2) the allegation in the search warrant affidavits that Plaintiff sold drugs is false; and 3) absent the alleged drug buy there is no probable case shown in the warrant. See id. There is a separate claim for an unreasonable *execution* of the search warrants. See id., at "Count III: Fourth Amendment Claims Unreasonable Search and Seizure in Execution of Warrants on Premises." Based upon the specific factual allegations made in Count II and the fact that there is a separate claim for unreasonable *execution* of the warrants, the Court finds that Count II only concerns the actions of Sergeant Ficke who drafted the affidavit for and obtained the 2010 search warrant and Detective Lopez who drafted the affidavit for and obtained the 2011 search warrant. Accordingly, the Court will not consider arguments/facts concerning other

---

[4] This refers to the date that the affidavit for the search warrant was submitted and executed. The search warrant was not filed until May 21, 2010.
[5] This refers to the date that the affidavit for the search warrant was submitted. The search warrant was executed on March 24, 2011. The search warrant was not filed until April 14, 2011.

Defendant's reliance on the search warrants obtained by Sergeant Ficke and Detective Lopez. The importance of this distinction becomes more obvious during the Court's discussion of the relevant case law surrounding Count II.    Again, to the extent that Count II is intended to be asserted against any other Defendant, the Court finds that Plaintiff has failed to introduce any evidence that any Defendants except for Sergeant Ficke and Detective Lopez were involved in applying for the search warrants, and thus, those claims are dismissed.

**May 11, 2010 Search Warrant**

In the affidavit for the May 11, 2010 search warrant, Sergeant Ficke, as the affiant, made the following factual assertions:

During May 2010 Sergeant Ficke was working as a narcotics detective and was familiar with how individuals distributed and sold narcotics.  See **(Doc. No. 21-1)**, Affidavit for May 11, 2010 Search Warrant, p.1.  Within seven-two hours prior to May 11, 2010, a confidential informant ("CI") contacted Sergeant Ficke and told him that "it" [6] had knowledge of several locations where narcotics were being sold on a regular basis.  Id., at p.2. Sergeant Ficke also advised the CI of places where Sergeant Ficke had reason to believe narcotics were being sold. Id.  The CI was a self-admitted drug user and was familiar with how narcotics look and how drugs are packaged and sold.  Id.  Further, the CI had provided Sergeant Ficke with true and correct information in the past.  Id.  Sergeant Ficke and the CI agreed to conduct a "controlled buy" at Plaintiff's business, a location the CI reported where narcotics were being sold.  Id.  The CI described the individual who was selling narcotics at Plaintiff's business as the owner of the business, the plaintiff.  Id.  The CI was provided with money, was searched prior to entering the business, and was kept under constant surveillance while entering the business.  Id.  The CI

---

[6]  The Court will follow Defendants' practice of calling the CI "it", because the gender of the CI is not known to the Court.

exited the business after a few minutes and met Sergeant Ficke and other detectives at a predetermined location.  Id.  The CI was searched upon its arrival at the location, and Sergeant Ficke located a black tarlike substance on its person.  Id.  No other money or contraband was found on the CI.  Id.  Sergeant Ficke conducted a field test of the substance and it tested presumptively positive for heroin.  Id.  The heroin was tagged into evidence.  Id.

Plaintiff alleges that Sergeant Ficke essentially fabricated the story about a CI.  Plaintiff cannot rely on this broad allegation, but instead must point to specific facts that support his allegation.  See Neiberger v. Hawkins, 6 F. App'x 683, 686 (10th Cir. 2001) (unpublished) ("mere conclusory allegations without specific facts will not defeat the defense of qualified immunity.").  Plaintiff makes two factual allegations[7] in support of this theory: 1) Plaintiff alleges that neither he nor any of his employees ever sold drugs out of his store; and 2) Plaintiff alleges that in April or May 2010, prior to the execution of the first search warrant, Plaintiff observed Sergeant Ficke stopping and searching customers as they exited Plaintiff's store and when Plaintiff confronted Sergeant Ficke and asked him to stop, Sergeant Ficke told Plaintiff to "mind his own business."  See (Doc. No. 28-3), Affidavit of Dennis Chavez.  Plaintiff alleges this interaction prompted Sergeant Ficke to retaliate by fabricating the story about the CI.  Defendants argue that Plaintiff's assertion that he did not sell drugs does not defeat probable cause, because officers may legally arrest a person who is ultimately proven innocent so long as

---

[7]  Plaintiff also alleges that there are inconsistencies between Sergeant Ficke's incident report and the affidavit for the search warrant.  See (Doc. No. 28), at p. 25.  Namely, Plaintiff claims that Sergeant Ficke changed his story about where he first received information that Plaintiff was selling drugs out of his business, and that the timeline of events is physically impossible.  Addressing the first issue, there is no inconsistency between the two documents, because both indicate that Sergeant Ficke received information from an unknown source prior to meeting with the CI and that the CI also confirmed that Plaintiff was selling narcotics.  Additionally, Plaintiff's argument regarding the timing of events, specifically that Sergeant Ficke could not have conducted the controlled buy on May 11, 2010, the same day the search warrant was executed, because the search warrant was filed only eight minutes after Plaintiff's business opened is flawed.  The search warrant was filed ten (10) days after it was executed.  The search warrant was signed hours after Plaintiff's business opened, giving Sergeant Ficke plenty of time to conduct the controlled buy.  Therefore, these two issues do not create dispute of fact.

probable cause exists at the time of the arrest.   The Court agrees with Defendants' argument, however, Plaintiff's assertion that he did not sell drugs is a specific fact from which a reasonable juror could conclude that Sergeant Ficke fabricated the information about the CI.   Plaintiff's allegations have also provided a possible motive for Sergeant Ficke's actions, the earlier interaction between Sergeant Ficke and Plaintiff.    While the Court recognizes that this is weak evidence, it is not for the Court to judge the credibility of Plaintiff against that of multiple APD officers at this point.   Because the Court must view the light in the most favorable to Plaintiff, it must accept Plaintiff's allegation that Sergeant Ficke fabricated his interaction with the CI in spite of the fact that this theory is based solely on Plaintiff's own affidavit.

### March 23, 2011 Search Warrant

In the affidavit for the March 23, 2011 search warrant, Detective Lopez, as the affiant, made the following factual assertions:

In March of 2011 Detective Lopez was working as a narcotics detective and was familiar with how individuals distributed and sold narcotics.   See **(Doc. No. 21-1)**, Affidavit for March 23, 2011 Search Warrant, p.1.   Detective Lopez received information that narcotics were being sold out of Plaintiff's business.   Id., at p. 2.   Detective Lopez employed a CI to investigate the sale of narcotics at Plaintiff's business.   Id.   The CI was a self-admitted drug user and was familiar with how narcotics look and how drugs are packaged and sold.   Id.   Further, the CI had provided Detective Lopez with true and correct information in the past.   Id.   Detective Lopez and the CI agreed to conduct a "controlled buy" at Plaintiff's business, a location the CI reported where narcotics were being sold.   Id.   The CI was provided with money, was searched prior to entering the business, and was kept under constant surveillance while entering the business.   Id. The CI exited the business after a few minutes and met Detective Lopez and other detectives at a

predetermined location.  Id.  The CI was searched upon its arrival at the location, and Detective Lopez located a substance wrapped in foil on its person.  Id.  No other money or contraband was found on the CI.  Id.  Detective Lopez conducted a field test of the substance and it tested presumptively positive for heroin.  Id.  The heroin was tagged into evidence.  The CI identified Plaintiff as the individual who sold it the heroin.  Id.

Again, Plaintiff alleges that the story about the interaction with the CI was fabricated or somehow misrepresented to the judge issuing the warrant.  In addition to the factual allegations made regarding the May 2010 warrant, Plaintiff also argues that the second warrant was executed in order to punish Plaintiff because no narcotics were found in the first warrant.  As with the factual allegations made regarding the first warrant, the Court must accept Plaintiff's factual allegations regarding Defendants' motive for fabricating the story about a CI and Plaintiff's claim of innocence as true.  Accordingly, the facts to which the Court must apply the qualified immunity analysis are that: Detective Lopez knowingly supplied false/misleading information to the judge in support of the March 23, 2011 search warrant.

A. *Plaintiff's Version of the Facts, if Taken as True, Amount to a Fourth Amendment Violation*

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court ruled that if a police officer makes a false statement knowingly and intentionally, or with reckless disregard for the truth in an affidavit for a warrant, then the false statements must be disregarded in deciding whether the affidavit demonstrates probable cause.  In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court introduced the "good faith exception" holding that "evidence recovered pursuant to a legally deficient warrant is still admissible in criminal proceedings so long as the warrant was issued by a neutral magistrate and the executing officers' reliance on the warrant was objectively reasonable."  Id., at 913.  However, in Leon, the Supreme Court

preserved the reasoning of <u>Franks</u> by specifically holding the "good faith" exception does not apply where the issuing judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." <u>Id.</u>, at 923. In <u>Malley v. Briggs</u>, 475 U.S. 335 (1986), the Supreme Court applied the <u>Leon</u> objective reasonableness standard to a claim that an officer violated a suspect's rights, not in executing a warrant but in requesting a warrant. <u>See id.</u>, 475 U.S. at 344-45 ("Accordingly, we hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in [<u>Leon</u>], defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest."). The Supreme Court stated that an officer is immune from liability for his actions in seeking a warrant unless "a reasonably well-trained officer in [the defendant officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." <u>Id.</u>, 475 U.S. at 345. Based upon the language in <u>Malley</u> specifically referencing <u>Leon</u> and <u>Franks</u>, the Tenth Circuit has held that an officer violates a suspect's Fourth Amendment rights by obtaining a warrant "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." <u>DeLoach v. Bevers</u>, 922 F.2d 618, 622 (10th Cir.1990). "[R]eckless disregard for the truth occurs whenever the affiant in fact entertains serious doubts as to the truth of his allegations. Furthermore, reckless disregard for the truth can be inferred where the circumstances provide obvious reasons for doubting the truthfulness of the allegations." <u>Salmon v. Schwarz</u>, 948 F.2d 1131, 1140 (10th Cir. 1991).

When a defendant moves for summary judgment asserting he is qualifiedly immune and his state of mind is an element of the plaintiff's claim, he must do more than merely raise the

immunity defense; he "must make a prima facie showing of the 'objective reasonableness' of the challenged conduct." Lewis v. City of Ft. Collins, 903 F.2d 752, 755 (10th Cir.1990).   If the defendant makes this prima facie showing, the plaintiff must then produce specific evidence of the defendant's culpable state of mind to survive summary judgment.  Id.   The Tenth Circuit has held the above standard applies where a plaintiff has alleged an officer knowingly or recklessly provided false information in an arrest/search warrant affidavit.  See Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir. 1991).

Defendants have offered evidence that Sergeant Ficke and Detective Lopez did obtain the search warrants in good faith.  See **(Doc. No. 21-1)**, Affidavit of Sergeant Ficke; Affidavit of Detective Lopez.  However, as discussed above, Plaintiff has produced specific evidence from which a reasonable juror could infer that Sergeant Ficke and Detective Lopez knew the information they provided to the judges that signed the respective warrants was false.  If both Sergeant Ficke and Detective Lopez fabricated the information about the controlled buys with the CI's, then it is clear that they knew the information they provided was false.  See Groh v. Ramirez, 540 U.S. 551, 564, 124 S. Ct. 1284, 1293, 157 L. Ed. 2d 1068 (2004) ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant [] and was [] valid.").  Accordingly, the facts, taken in the light most favorable to Plaintiff demonstrate a constitutional violation.

   B.   *The Right was Clearly Established at the Time Sergeant Ficke and Detective Lopez drafted the Search Warrant Affidavits*

Although a case exactly on point is not necessary in order for a right to be clearly established, in this instance there is a case on all fours with the current set of facts.  In Bruning, the plaintiff was arrested and forced to give blood and hair samples based upon affidavits prepared by two separate detectives.  See id., 949 F.2d 355.  After the criminal charges were

dropped for lack of prosecution, the plaintiff brought a lawsuit alleging violations of his civil rights.  Id.  "Plaintiff admitted that on their faces, Defendants' affidavits established probable cause [for his arrest and DNA samples]. He contended, however, that the affidavits contained material false statements or omissions that Defendants made intentionally or with reckless disregard for the truth."  Id.  The defendants moved for summary judgment arguing that based upon Malley they were entitled to qualified immunity.  Id., 949 F.2d at 356.  The district court denied qualified immunity and the defendants appealed that decision to the Tenth Circuit.  Id.  The Tenth Circuit first determined that in the light most favorable to the plaintiff, the facts could lead to the inference that the defendants either knowingly or recklessly provided false statements in and/or omitted material information from their affidavits.  Id., 949 F.2d at 357.  ("Plaintiff came forward with specific evidence from which one could infer that Defendants recklessly made false statements in, and omitted material information from, their affidavits.").  The Tenth Circuit upheld the district court's denial of qualified immunity, noting:

> At the time Defendants drafted the affidavits at issue, the law was clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or search warrant, if the false statement were material to the finding of probable cause.

Id.

Here, Plaintiff has put forth specific facts, namely that Plaintiff never sold drugs and that Sergeant Ficke and Detective Lopez had a motive to fabricate the account about the CI's from which a reasonable jury could infer that Sergeant Ficke and Detective Lopez included false statements in their affidavits that formed the basis for 2010 and 2011 search warrants. Accordingly, Defendants are not entitled to qualified immunity on Count II of Plaintiff's Complaint.

**V.    Only Sergeant Stout is Entitled to Qualified Immunity on Count III-Search of premises**

   *A.    Defendant Sergeant Glen Stout is Entitled to Summary Judgment on Count III*

As a preliminary matter, the Court addresses Defendants' contention that Defendant Sergeant Glen Stout was not involved in any capacity in the execution of the May 11, 2010 search warrant.  See **(Doc. No. 21)**, p. 9, ¶65; **(Doc. No. 21-1)** affidavit of Sergeant Stout, at ¶2; The Court will address the specifics of Plaintiff's claim later on, but at this point it is sufficient to note that Plaintiff's claims regarding the destruction of his property only relate to the first warrant that was executed on May 11, 2010.  See **(Doc. No. 28-3)**, Affidavit of Dennis Chavez, ¶¶ 29-31.  Plaintiff claims that Defendants' asserted fact that Sergeant Stout was not present at the May 11, 2010 search is immaterial.  See **(Doc. No. 28)** at p. 14, ¶ 35.

"If the Court is to hold [government] officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding that the officer is the one who violated the Constitution."  Sisneros v. City of Albuquerque, No. Civ. 02-1035 JB/KBM, slip op. at 14 (D.N.M. filed November 7, 2003) [Doc. No. 35] (dismissing excessive force claim against certain officers and stating that plaintiff "cannot prove, what, if anything, any of the officers did to him.") (citations omitted). The law is clear in the Tenth Circuit that "[i]ndividual liability under §1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996).  "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 768 (10th Cir. 2013)  (citing Iqbal, 556 U.S. at 676).  This is an essential element of proof.  Id.; Scull v. New Mexico, 236 F.3d 588, 599 (10th

Cir. 2000) (stating that "none of the [Bernalillo County Detention Center] BCDC  Appellees was involved in the delay" and "[c]onsequently, Mr. Reed has no § 1983 claims against the BCDC Appellees, regardless of the lawfulness of the detention.").

Far from being immaterial, Sergeant Stout's presence at the May 10, 2010 search warrant is paramount to Plaintiff's claim against him.  Plaintiff has not introduced any specific facts that demonstrate that Sergeant Stout was even present during the execution of May 10, 2010 search warrant where Plaintiff's property was allegedly destroyed, let alone that he personally participated in destroying Plaintiff's property.   Accordingly, Sergeant Stout is entitled to summary judgment on Count III.

*B. Plaintiff's Facts, if Believed, Demonstrate a Constitutional Violation By Sergeant Ficke, Detective Lopez, and Commander Christman*

"An officer's conduct in executing a search is subject to the Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure."  Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir. 1997).  As long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution.  See Dalia v. United States, 441 U.S. 238, 257 (1979).  Occasionally, such details include damaging property, detaining residents, or taking action necessary to protect the searching officers.  See Lawmaster, 125 F.3d at 1349. However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."  United States v. Ramirez, 523 U.S. 65, 71 (1998).

Here, Plaintiff has alleged that APD officers needlessly destroyed property, spilt soda, spit tobacco juice, and actually broke some items during the course of the execution of the May

11, 2010 search warrant.[8] See **(Doc. No. 28-3)**, Affidavit of Dennis Chavez, ¶¶ 29-31. Although Sergeant Ficke, Detective Lopez and Commander Christman deny that they needlessly destroyed Plaintiff's property, they do admit that they participated in the execution of the search warrant during which Plaintiff's property was allegedly damaged. Viewing the facts in the light most favorable to Plaintiff, the Court cannot hold, as a matter of law, that the damage alleged by Plaintiff was necessary to the execution of the search warrant on Plaintiff's premises. Further, Plaintiff has provided sufficient facts from which a reasonable juror could conclude that Sergeant Ficke, Detective Lopez, and Commander Christman were personally involved in the destruction of Plaintiff's property. Plaintiff has sufficiently alleged a violation of his Fourth Amendment right to be free from unreasonable search by providing some evidence that the above-named Defendants unnecessarily damaged his property, thus satisfying his burden under the first prong of qualified immunity.

> C. *The Right was Clearly Established at the Time of the Search*

The second consideration is whether this right is clearly established. In Lawmaster, the Tenth Circuit faced the question of whether officers were entitled to qualified immunity for an unreasonable search claim based upon the plaintiff's allegations that officers left a gun in his dog's water bowl and left cigar ashes throughout his home. See Lawmaster, 125 F.3d at 1349. After first finding that the plaintiff had sufficiently alleged a Fourth Amendment violation, the Tenth Circuit turned to the question of whether the right was clearly established. See id., at 1350. "We hold the law mandating officers act reasonably while conducting a search was sufficiently well established at the time of the [officers'] search of [the plaintiff's] home such

---

[8] For the purposes of the unreasonable execution claim, Plaintiff has presumed that the search warrant was valid. The Court agrees with this approach and sees this as a separate and distinct claim from Plaintiff's claim that the search warrant was invalid. In other words, the Court views Count III as alleging that even if the Court were to find that the search warrant was proper, Plaintiff continues to assert that the search warrant was executed in an unreasonable manner.

that the [officers] should have known their conduct transgressed [plaintiff's] Fourth Amendment rights." Id. The Tenth Circuit went on to state:

> while it is true there are no decisions expressly prohibiting officers from leaving guns submerged in water or prohibiting officers from leaving cigar or cigarette ashes in a home, it is well established the Fourth Amendment is in place to preserve the sanctity of the home to the largest extent consistent with the reasonable exercise of law enforcement duties. Concomitantly, the law is well established officers may only engage in conduct that reasonably furthers the purpose for which they are in the home; those officers who execute a warrant in an unreasonable manner violate the Constitution.

Id., at 1350-51 (citation omitted).

Based upon the above-referenced case law, the Court finds a reasonable officer would have known that unnecessarily destroying property or damaging an area with soda or tobacco juice would violate a suspect's Fourth Amendment right to be free from unreasonable search and seizure. Accordingly, Sergeant Ficke, Detective Lopez, and Commander Christman are not entitled to qualified immunity on Count III.

## VI.    Only Sergeant Stout is Entitled to Qualified Immunity on Count V- Unreasonable Search of Plaintiff

Plaintiff alleges that Defendants conducted an illegal strip search of Plaintiff, which was made worse by the fact that it was in the presence of a female patron. See **(Doc. No. 28-3)**, Affidavit of Dennis Chavez, at ¶15. Plaintiff also alleges that certain Defendants made disparaging comments about his genitals. Id., at ¶16. Defendants deny that this alleged strip search took place in front a female customer. They also deny that any Defendant insulted Plaintiff's genitals. However, the facts as the Court must view them are that Plaintiff was strip searched in view of a female customer.

### A.    *Sergeant Stout is Entitled the Summary Judgment*

Defendants mistakenly argue that Plaintiff has only asserted claims against Sergeant Ficke for the strip search. However, Plaintiff has asserted that multiple officers strip searched

Plaintiff.  See **(Doc. No. 28-3)**, Affidavit of Dennis Chavez, at ¶¶15-16; see also Plaintiff's First Amended Complaint, at ¶¶81-82.  Defendants Detective Lopez and Commander Christman have admitted that they were present during the May 10, 2011 search warrant along with Sergeant Ficke.  See **(Doc. No. 21)**, pp. 7, 9.  Although both Detective Lopez and Commander Christman deny that they participated in the alleged strip search of Plaintiff, Plaintiff's assertion that multiple officers strip searched him is enough to overcome the denial of their involvement. However, as noted above, Plaintiff has no evidence to rebut Sergeant Stout's assertion that he was not even present at the May 10, 2011search warrant when Plaintiff was allegedly strip searched.  Accordingly, Sergeant Stout is entitled to summary judgment on Count V to the extent that Count V is intended to be alleged against him.

> B.     *The Facts in Light Most Favorable to Plaintiff Demonstrate a Violation of Plaintiff's Fourth Amendment Rights*

It is "well established premise is that "a strip search is an invasion of personal rights of the first magnitude." Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002).  "The propriety of a strip search requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Hill v. Bogans, 735 F.2d 391, 393-94 (10th Cir. 1984) (citation omitted).  One of the primary concerns in evaluating the reasonableness of a strip search is "whether there is reasonable suspicion that the [suspect] has concealed weapons, drugs, or contraband." Archuleta v. Wagner, 523 F.3d 1278, 1284 (10th Cir. 2008).  Reasonable suspicion for a search is a minimum level of objective justification "based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." United States v. Rice, 483 F.3d 1079, 1083 (10th Cir.2007).  "The officer need not be absolutely

certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [her] safety or that of others was in danger." Id. at 1082–83 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). "The crime [with] which [a suspect is] charged can provide some cause for suspicion, but it must be one 'commonly associated by its very nature with the possession of weapons or contraband" to help provide reasonable suspicion for a strip search. Archuleta, 523 F.3d at 1285 (citing Hill, 735 F.2d at 394). However, the fact that a person was arrested for a drug-related charge does not, without more, satisfy the reasonable suspicion standard. Foote v. Spiegel, 118 F.3d 1416, 1426 (10th Cir. 1997) ("The belief that [the plaintiff] had drugs hidden in a body cavity because she was suspected of driving while under the influence of drugs, when no drugs had been found in her vehicle, on her passenger, or in a pat-down search, was unreasonable."). Courts also consider whether the officer could have located the items without such an invasive search, such as a pat down. Id., 118 F.3d at 1425 ("Almost anything the strip search could have revealed would already have been discovered in the pat-down search.").

This case presents an unusual scenario, because it is not often that a suspect is strip searched on the scene. Rather, most strip searches take place in detention facilities prior to the individual being placed into the general population. At any rate, it is clear that an officer must have reasonable suspicion to believe that the individual to be searched is concealing weapons, drugs, or contraband on their person. This is a specific inquiry and cannot be based upon a general belief that a suspect has committed a drug-related offense. See Foote supra. Defendants' arguments center around their allegation that they had reasonable suspicion to believe that Plaintiff had drugs on his body given the nature of the allegations against Plaintiff and the reasons for the search warrant. However, Plaintiff has raised an issue of disputed fact as to

whether Sergeant Ficke misrepresented the basis for the search warrant, the controlled buy with the CI.  Therefore the Court cannot find, viewing the facts in the light most favorable to Plaintiff, that a reasonable officer would think he had reasonable suspicion to believe that Plaintiff had drugs on his person based upon fabricated information regarding a CI.  Thus, Plaintiff's version of the facts, if believed, demonstrate that the officers conducted a strip search of Plaintiff without reasonable suspicion to believe that Plaintiff had drugs on his person, thereby violating Plaintiff's Fourth Amendment rights.

*C. Plaintiff's Right to be Free From a Strip Search Under the Circumstances Alleged by Plaintiff was Clearly Established at the Time of the Search*

It is clearly established that in order to perform a strip search, an officer must have reasonable suspicion to believe that the suspect is concealing either drugs or weapons upon his person.  See Wagner, 523 F.3d 1278, 1284 (10th Cir. 2008).  Further, it would have been clear to a reasonable official in the officers' position that they lacked reasonable suspicion to believe that Plaintiff was concealing drugs on his person.  In Archuleta, the Tenth Circuit held that an officer should have known that he did not have reasonable suspicion to strip search a female detainee when the officer knew that the female "did not have [the suspect the police were searching for]'s identifying marks.  Id., 523 F.3d at 1285.   At the time that the officers allegedly strip searched Plaintiff, the police had not located any drugs at Plaintiff's business and the only evidence that the officers had that Plaintiff was concealing drugs was evidence that, accepting Plaintiff's allegations as true, had been fabricated by Sergeant Ficke.  Finally, it would have been clear that it was unreasonable for the officers to search Plaintiff in public view without any justification for conducting the search in a public area.   See Hill, 735 F.2d 391 (10th Cir.1984) (holding that a strip search of a motorist detained for a minor traffic offense, which was conducted in a lobby area in view of ten to twelve persons, violated his constitutional rights because there was neither

a sufficient security justification for the search, nor any justification for conducting the search in a public area.);  see also Farmer v. Perrill, 288 F.3d 1254, 1260 (10th Cir. 2002) ("Thus, we conclude that plaintiff has identified a well[-]established right, the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others *unless the procedure is reasonably related to a legitimate penological interest.*") (emphasis in original).   A reasonable official in the officers' position would have known conducting a strip search without reasonable suspicion to believe that the individual was concealing drugs on his person and conducting the strip search in the public view without legitimate reasons for doing so violates that suspect's Fourth Amendment rights.   Accordingly, the facts in the light most favorable to Plaintiff preclude qualified immunity.

### VII. The Individual Defendants are Entitled to Qualified Immunity on Count VI – Unconstitutionality of Ordinance and the City of Albuquerque is Entitled to Summary Judgment

Count VII alleges First and Fourteenth Amendment violations in relation to the use of the Nuisance Abatement Team and requests that "the ordinance" be declared unconstitutional. [9]   **See (Doc. No. 1-1)**, at p. 12.   The Court agrees with Defendants that the language of Count VII, similar to the rest of Plaintiff's Complaint, is not a model of clarity, because Plaintiff's request to have the ordinance declared unconstitutional appears to be a facial challenge to the ordinance. However, in his Response, Plaintiff claims to be alleging a municipal liability claim against the City of Albuquerque for promoting a policy that allows its agents, APD and AFD employees to violate individuals First Amendment and Fourth Amendment rights.   Plaintiff also asserts that Count VII is a Fourteenth Amendment claim against all individually-named defendants for the deprivation of his property interests.   It is odd that Plaintiff declares he is not asserting a challenge to the language of any statute when the very caption of Count VII references the

---

[9] The Court notes that Plaintiff never identified the specific ordinance he is challenging.

unconstitutionality of "the ordinance".  Although Plaintiff's complaint is not completely clear, because the instant motion is one for summary judgment, the Court will consider Plaintiff's characterization of his claims in his Response in addition to the allegations in the Complaint. Accordingly, the Court will consider the following claims: 1) a claim against Lieutenant Shane Turpen for shutting down Plaintiff's business in violation of Plaintiff's Fourteenth Amendment Rights; 2) a claim against the APD Defendants for a violation of Plaintiff's Fourteenth Amendment Rights relating to the closure of Plaintiff's business; and 3) a municipal liability claim against the City for establishing a policy of using building codes to violate citizens' First and Fourteenth Amendment rights.

     A.     *Claim Against Lieutenant Turpen*

Lieutenant Shane Turpen was a Fire Marshall for the Albuquerque Fire Department ("AFD") in May of 2010.  See **(Doc. No. 21),** at p. 8.  Lieutenant Turpen was contacted to perform an inspection at Plaintiff's business.  Id.  Defendants do not provide any evidence about who contacted Lieutenant Turpen about inspecting Plaintiff's business.  While Plaintiff alleges he was contacted by members of APD who were present at the May 10, 2010 search warrant, he does not provide any actual evidence in support of this allegation.  Lieutenant Turpen determined that there were numerous violations of the fire code and that Plaintiff's business should be temporarily closed.  Id.  Based on his training and experience, the wiring, flammable gas, lack of fire extinguisher, and improper use of extension cords created an immediate safety problem on May 11, 2010.  Id.  In Lieutenant Turpen's judgment, the issues were potentially life threatening and could have caused immediate great bodily harm to Plaintiff and his patrons.  Id.  Lieutenant Turpen asserts his decision to temporarily close the business was not forced by APD officers or members of the nuisance abatement team.  Id.  Lieutenant Turpen decided to temporarily close

Plaintiff's business because: 1) Plaintiff's business was without the requisite fire extinguisher; 2) Plaintiff was improperly using extension cords in the business; 3) there was exposed wiring from the ceiling in Plaintiff's business; and 4) because Plaintiff was storing liquefied petroleum/flammable gas in the business.  Id.  Lieutenant Turpen shut Plaintiff's business down for three months.  See **(Doc. No. 28),** p. 20.  Finally, Lieutenant Turpen did not determine that other businesses in the same building structure as Plaintiff's store were substandard.  Id.

Plaintiff "challenges" the basis for Lieutenant Turpen's decision to declare Plaintiff's business substandard and claims it was "arbitrary and capricious".  However, Plaintiff does not provide any facts in support of this conclusory allegation, nor does Plaintiff appear to specifically challenge the factual findings made by Lieutenant Turpen. Also, Plaintiff simply declares that APD officers involved in the search warrant on Plaintiff's business told Lieutenant Turpen to shut it down without providing any factual basis for this allegation.

Courts "engage in a two-step inquiry [in determining whether an individual's procedural-due-process rights were violated]: (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"  Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir.1999).  The amount of process deemed sufficient will vary with the facts of a particular case. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  In weighing whether the process afforded was sufficient, courts apply the balancing test promulgated in Mathews v. Eldridge, 424 U.S. 319 (1976), and consider the private interest involved, the risk of erroneous deprivation resulting from the procedures used, the probable value of additional procedural safeguards, and the government's interest in efficient procedures.  Clark, 168 F.3d 1185 (10th Cir. 1999) (citing Matthews, 424 U.S. at 335).  "[S]ubstantive due process requires only that termination of a protected interest not be arbitrary,

capricious, or without a rational basis."  Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1215 (10th Cir. 1998)).  To reach this level, the government's action must be intentional, rather than merely negligent. See Collins v. City of Harker Heights, 503 U.S. 115, 127 n.10 (1992). ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."); County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("[T]he Due Process Clause is not a guarantee against incorrect or ill-advised [municipal] decisions . . . [and any] violation must be more than an ordinary tort to be actionable under [§] 1983."); Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations omitted).  The government's action must be of the sort that would "shock the conscience of federal judges." Collins, 503 U.S. at 126; Radecki v. Barela, 146 F.3d 1227, 1229 (10th Cir. 1998)("[I]n order to prevail on a substantive due process claim such as the one asserted here, the plaintiff must demonstrate that the defendant acted in a manner that shocks the conscience."

**Procedural due process**

It is unclear whether Plaintiff is alleging a violation of his procedural due process rights, but out of an abundance of caution the Court will consider Count VII as though it does raise a procedural due process claim, because portions of Plaintiff's Complaint and Response do reference the standard for procedural due process.  The Tenth Circuit's decision in Camuglia v. The City of Albuquerque, 448 F.3d 1214 (10th Cir. 2006), is dispositive of Plaintiff's procedural due process claim against Lieutenant Turpen.  In Camuglia, the plaintiff's restaurant was temporarily closed after a City health inspector determined that the restaurant had several health code violations that constituted a "substantial hazard" to the public health.  Id., at 1219.  The health inspector acted on the authority of an Albuquerque City ordinance which gave the inspector the authority to, "without any prior warning, notice, or hearing, issue a written notice to

the permit holder or operator citing such condition" and "if deemed necessary, [order] that the permit is immediately suspended and all food-service or food processing operations are to be immediately discontinued" where there was a substantial hazard to public safety.  <u>Id.</u>   The plaintiff eventually brought a lawsuit alleging a violation of his due process rights.  <u>Id.</u>   In discussing his procedural due process claim, the Tenth Circuit noted that the plaintiff was not challenging the constitutionality of the ordinance, but instead specifically challenging the inspector's finding that there was a substantial hazard.  <u>See</u>  <u>id.</u>, at 1221.  (quoting the plaintiff's attorney, "[w]e're not challenging the constitutionality of the ordinance itself. We're contesting or challenging the manner in which it was applied in this particular instance, because there's no substantial hazard.").  The Tenth Circuit noted "[i]n matters of public health and safety, the Supreme Court has long recognized that the government must act quickly.  Quick action may turn out to be wrongful action, but due process requires only a post-deprivation opportunity to establish the error."  <u>Id.</u>, at 1220 (collecting cases).  The Tenth Circuit stated "[i]n light of this precedent it cannot be denied that the City, acting through its inspectors, may close a restaurant to protect the health of patrons and workers without first providing a hearing to the restaurant owner."

The Court held that the Plaintiff's argument that the inspector was wrong, even maliciously wrong, about whether there was a substantial health risk "misse[d] the point."  <u>Id.</u>, at 1221.  The Tenth Circuit reasoned:

> [The Plaintiff's argument] concedes that limiting the owner to a postdeprivation hearing comports with due process when the government has acted properly, but contends that a predeprivation hearing is required when the government has erred. In other words, the government can delay the hearing until after the deprivation only when the deprivation was in fact lawful. We might ask why even a postdeprivation hearing is required in that circumstance, when one is conceding that the government did nothing wrong. The purpose of a hearing, after all, is to determine *whether* government conduct has been (or would be) unlawful. When

> the Supreme Court states that granting just a postdeprivation hearing is
> constitutionally adequate, it is saying that determining the propriety of
> government action can wait.

Id. (emphasis in original)

The Court dismissed the plaintiff's dispute regarding the underlying facts of the violations, noting the disputed facts are "irrelevant to whether [the plaintiff] was entitled to a hearing before suspension of his permit. The process one is due is not dependent on whether the government was right or wrong in the particular case." Id., at 1222. Accordingly, the Tenth Circuit held that the plaintiff had not alleged a viable due process claim.

Here, notwithstanding the caption of Count VII, Plaintiff has clearly stated he "does not challenge the language of the statutes." See (**Doc. No. 28**), p. 42. Albuquerque's Substandard Building ordinance states that "any building or portion of a building where there exists inadequate sanitation conditions —to the extent that endangers the life, limb, health, property, safety or welfare of the public or occupants thereof shall be deemed and declared a SUBSTANDARD BUILDING." Ord. 34-1985 § 14-3-4-1. This ordinance also gives the inspector the authority to immediately shut down the violating business. Plaintiff does not challenge the fact that the City ordinances give a fire marshal the authority to shut down a business for code violations. Instead, Plaintiff alleges that Lieutenant Turpen acted outside the authority of the statute, because Plaintiff disputes that there was an imminent risk of great bodily harm from the building code violations. See (**Doc. No. 28**), p. 20 ("The improper use of an extension cord, having flammable material, and some wiring exposed does not reasonably create such a safety concern as to prohibit entrance to the building by anyone."). This is the exact argument rejected in Camuglia. Plaintiff's dispute of whether there is an imminent risk of great bodily harm is "irrelevant" to the issue of whether he was afforded due process. See Camuglia, at 1222. The Supreme Court and the Tenth Circuit have consistently held a post-deprivation

remedy is sufficient in matters concerning public health and welfare.  In fact, the building ordinance at issue is comparable to the procedure upheld in Camuglia.  Accordingly, the facts when viewed in the light most favorable to Plaintiff do not demonstrate a violation of Plaintiff's procedural due process rights.  Therefore, Lieutenant Turpen is entitled to qualified immunity on this aspect of Count VII.

**Substantive Due Process**

An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause."  Clark, 168 F.3d at 1190. But the arbitrariness must be extreme.  Id.  The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.  Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir.2006).  It is well settled that negligence is not sufficient to shock the conscience.  Id.  In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.  Id.  "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir.1995). This is a "high level of outrageousness."  Id. Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."  Id. at 573.  Further, Plaintiff must demonstrate specific facts that tend to show a decision was arbitrary.  Camuglia, 448 F.3d at 1222-23.

In this instance, Plaintiff has generally alleged that Lieutenant Turpen's decision to declare his building substandard was arbitrary and capricious. Plaintiff does not provide any specific facts to support this allegation and thus, the Court is not required to accept this assertion. Further, while Plaintiff disputes the characterization of the building as substandard, Plaintiff does not dispute any of Lieutenant Turpen's findings such as the finding that Plaintiff did not have a fire extinguisher. Thus, in the light most favorable to Plaintiff, Lieutenant Turpen went to Plaintiff's business found multiple fire hazards, and then shut down Plaintiff's business. Plaintiff failed to provide any facts that demonstrate Lieutenant Turpen's findings of several code violations was erroneous. A city official shutting down an establishment that he reasonably found to be a fire hazard does not "shock the conscience." Plaintiff has failed to demonstrate a violation of his substantive due process rights. Accordingly, Lieutenant Turpen is entitled to qualified immunity on Plaintiff's substantive due process claim.

B.      *APD Defendants*

Sergeant Ficke, Commander Christman, Sergeant Stout, and Detective Lopez are entitled to summary judgment on Count VII of Plaintiff's Complaint because Plaintiff's theory is that the APD Defendants caused Lieutenant Turpen to violate Plaintiff's Fourteenth Amendment rights by shutting down Plaintiff's business. As noted above, Plaintiff has not demonstrated that Lieutenant Turpen violated his rights, thus, the claims against APD Defendants likewise fail. The Court also points out that Plaintiff failed to provide any evidence that any of the APD Defendants actually caused Lieutenant Turpen to close Plaintiff's business. In their Motion for Summary Judgment, Defendants provided affidavits of each one of the above-named individuals stating that none of the officers participated in the decision to close Plaintiff's business and did not cause the conditions for which Plaintiff's business was shut down. See e.g. (**Doc. No. 21-1**),

Affidavit of Sergeant Ficke, ¶44; Affidavit of Commander Christman, ¶¶7-8.  In his Response, Plaintiff generally challenges Defendants' factual allegations, but does not provide any specific facts linking APD Defendants to Lieutenant Turpen's decision to close Plaintiff's business. Accordingly, based upon the evidence submitted by Plaintiff thus far, the Court cannot find any facts from which a reasonable juror could find that any of the Defendant Officers were a part of the temporary closure of Plaintiff's business.  Even if Plaintiff were able to prove some personal participation by an APD Defendant, the Court has already held the closure of Plaintiff's business did not violate his Fourteenth Amendment rights.  For these reasons, Defendants Sergeant Ficke, Commander Joe Christman, Sergeant Glen Stout, and Detective Donald Lopez are entitled to summary judgment on Count VII.

       C.    *Municipal Liability*

Municipal liability cannot lie unless there is an underlying constitutional violation.  <u>See City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1317–18 (10th Cir.2002) (holding that there is no municipal liability "when there was no underlying constitutional violation by any of its officers."); <u>Trigalet v. City of Tulsa, Oklahoma</u>, 239 F.3d 1150, 1155–56 (10th Cir.2001) ("[T]he City cannot be held liable where, as here, the officers did not commit a constitutional violation.").  The Court has already determined that none of the individual defendants violated Plaintiff's Fourteenth Amendment rights.  Thus, there can be no municipal liability claim based upon a Fourteenth Amendment violation.  Plaintiff also claims that a City policy caused the individual Defendants to violate Plaintiff's First Amendment rights.

Plaintiff does not provide any specific factual allegations regarding the First Amendment claim, but simply refers back to his First Amendment retaliation claim.  However, Plaintiff's First Amendment retaliation claim is based upon Sergeant Ficke's actions regarding the 2010 search warrant.  While the Court has denied Sergeant Ficke qualified immunity on Plaintiff's First Amendment claim in relation to the 2010 search warrant, the Court has made no such determination in regards to the temporary closure of Plaintiff's business.  Plaintiff has not provided any evidence regarding an underlying First Amendment violation in relation to the closure of Plaintiff's business or even specifically alleged one.   Accordingly, the municipal liability claim allegedly proclaimed in Count VII is dismissed in its entirety.

**THEREFORE, IT IS ORDERED**, that Defendants' Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds **(Doc. No. 21)** is **DENIED** in part and **GRANTED** in part.  Count VII of Plaintiff's First Amendment Complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED**, that to the extent that Counts III and VI are alleged against Sergeant Stout, he is entitled to the dismissal of those claims based upon qualified immunity.

**FINALLY, IT IS ORDERED**, that to the extent that Count I is alleged against any Defendant besides Sergeant Ficke, the other Defendants are entitled to qualified immunity.  To the extent that Count II is alleged against any Defendants except Sergeant Ficke and Detective Lopez, the remaining Defendants are entitled to qualified immunity.

_____
UNITED STATES DISTRICT JUDGE